**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MARJORIE SUE TUCK,

        Plaintiff,                      Case Number: 05-71334

v.                                        JUDGE PAUL D. BORMAN
                                             UNITED STATES DISTRICT COURT

OUTBACK STEAKHOUSE OF FLORIDA,
INC., a foreign corporation,

        Defendant,
_____ /

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT OUTBACK STEAKHOUSE OF FLORIDA, INC.'S MOTION FOR SUMMARY JUDGMENT (DOCK. NO. 13)**

Now before the Court is Defendant Outback Steakhouse of Florida, Inc.'s ("Defendant") Motion for Summary Judgment (Dock. No. 13). The Court held a motion hearing on December 20, 2006. Having considered the entire record, and for the reasons that follow, the Court GRANTS IN PART and DENIES IN PART Defendant's motion.

**I.    FACTS**

This controversy arises out of an incident which occurred at Defendant's Rochester Hills, Michigan Outback Steakhouse Restaurant (the "restaurant") on December 31, 2003. (Pl.'s Resp. 1). Defendant is a foreign corporation maintaining its principal place of business in Florida. (Compl. ¶ 2). Plaintiff Marjorie Sue Tuck ("Plaintiff"), a citizen of Michigan, was at Defendant's restaurant to eat dinner on the above date. (Def.'s Br. Ex. A, Pl.'s Dep. 54).

Plaintiff was sitting in a booth with her husband, located near the restaurant's restrooms.

Plaintiff left her table to use the restroom. (Pl.'s Resp. 1). While she was returning to her booth, she slipped and fell. (*Id*.). Plaintiff's Complaint alleges she slipped on an "over-waxed floor;" her response alleges that it was a "wet surface." (*See* Pl.'s Resp. 1; Compl. ¶ 5). When Plaintiff fell, she hit her right shoulder on a wooden and sharp edge, presumably the edge of a "half wall" partition, causing a laceration on her shoulder and herniated discs in her neck. (Def.'s Br. Ex. A, Pl.'s Dep. 54; Pl.'s Resp. 2). The "half wall" shelf partition was used by servers to keep pitchers of iced tea and water. (Def.'s Br. Ex. E, Russ Dep. 54).

According to Plaintiff, there was "no water or anything" visible on the floor, and without any degree of certainty, Plaintiff thought she slipped on tile flooring, not wood flooring. (Def.'s Br. Ex. A, Pl.'s Dep. 55, 65-66). Further, according to Plaintiff, waitress Lindsay Russ ("Russ"), accompanied Plaintiff to the restroom and looked at her shoulder. (Def.'s Br. Ex. A, Pl.'s Dep. 55).

Plaintiff further alleges that after her fall and return from the restroom with Russ, a rug was placed on the spot of the incident. (*Id*.). Plaintiff believes that it was Russ who then informed her that other patrons had fallen at that spot before and that the floor was always over-waxed. (*Id*.).

Russ testified that she does not remember Plaintiff's fall, accompanying Plaintiff to the restroom, looking at her laceration, or seeing any customers fall at the restaurant. (Def.'s Br. Ex. E, Russ Dep. 11, 14, 22).

Tim Rosseter ("Rosseter"), another customer having dinner at the time of Plaintiff's fall, witnessed the incident as he was sitting two booths closer to the restroom than Plaintiff. (Pl.'s Resp. Ex. 2, Rosseter Dep. 6, 7). Rosseter initially testified that he saw an employee mopping

the area of the fall shortly before seeing Plaintiff fall, (Pl.'s Resp. Ex. 2, Rosseter Dep. 11), but later backtracked on his statement and could not recall if the area was mopped. (*Id*. at 25). After Plaintiff's fall, Rosseter noticed that the floor was wet, but not with water. (*Id*. at 12). Rosseter also noticed that a sign, which stood like an inverted "V," was placed in the area of the fall after the incident. (*Id*. at 15).

The manager on duty, Matthew Tucker ("Tucker"), was informed by Russ that Plaintiff had fallen. (Def.'s Br. Ex. C, Tucker Dep. 27). Tucker checked the area after the fall and saw a clean floor with no debris, water, or grease. (*Id*. at 31). Tucker also conducted short interviews of Plaintiff and Rosseter, and then filled out an incident report. (*Id*. at 25). Plaintiff refused medical attention and left within ten minutes of her conversation with Tucker. (Def.'s Br. Ex. 3, Tucker Dep. 30, 32).

Plaintiff filed a one count Complaint on April 6, 2005 alleging negligence. Defendant filed the instant Motion for Summary Judgment on September 8, 2006. Plaintiff responded on October 10, 2006. On October 23, 2006, Defendant filed its Reply.

Defendant argues that Michigan premises liability law governs this motion. Defendant asserts that Plaintiff's claim fails because she cannot identify an unreasonable risk of harm caused by a dangerous condition. Defendant contends that Plaintiff has no evidence that the tile or wood floor was slippery. Defendant believes that the condition of the floor was open and obvious. Defendant avers that Plaintiff can only speculate that the condition of the floor was unreasonably dangerous and that she has no evidence that the condition of the floor caused her fall, beyond the fact that she fell. Defendant argues that Plaintiff has no evidence to suggest that an employee was the cause of the condition of the floor, or if the condition did exist, how long it

3

existed or whether Defendant was aware of its existence.

Plaintiff responds that Defendant has a duty to its invitees to exercise reasonable care to protect them from unreasonable risk, including inspecting the premises and discovering hazards. Plaintiff argues that the evidence suggests that Defendant created the unsafe condition on the premises by mopping the area just before Plaintiff's fall and placing water and iced tea on the half wall. Plaintiff contends that the wet floor was not open and obvious because even the store manager did not see anything on the floor after Plaintiff's fall. Plaintiff contends that whether something is open and obvious depends on whether it is reasonable to expect a person of reasonable intelligence to discover the danger upon casual inspection. Plaintiff avers that Rosseter's testimony that the floor was wet with water and that he had seen an employee mopping the area of the fall earlier creates a question of fact. Likewise, Plaintiff believes that Russ' testimony that pitchers of iced tea and water are kept on the half wall partition creates a question of fact as to whether that was the cause. Plaintiff also argues that a reasonable jury could find that Defendant created the unsafe condition by mopping the area before the fall or by placing pitchers of water and iced tea on the half wall partition.

Defendant replies that Rosseter gave conflicting testimony, which cannot be evidence that a mop was used on the area in question before Plaintiff's fall. Further, Defendant argues that Tucker and Russ both gave testimony that a mop would not be used in that area. Defendant avers that there is no evidence that Plaintiff's fall was due to water or iced tea, which sat on the half wall partition. Defendant contends that there is no testimony which indicates that there was a spill on the floor, or that the "wet" floor was caused by the nearby service bar. Additionally, Defendant argues that Plaintiff's testimony regarding Russ' statement that other customers have

4

fallen in the area is not sufficient evidence considering that Russ testified she does not recall any customers falling. Defendant asserts that even in a light most favorable to Plaintiff, there is no evidence that Defendant created a slippery condition by mopping the floor, that water or iced tea was spilled on the floor from the half wall partition, or that Defendant had notice of an unsafe condition of the floor.

## II.   ANALYSIS

### A.   Standard of Review

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof." FED. R. CIV. P. 56(b). Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323; *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting BLACK'S LAW DICTIONARY 881 (6th ed. 1979)) (citations omitted). A dispute

over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. FED. R. CIV. P. 56(e). The rule requires that non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see also Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment). "'[C]onclusory' allegations unsupported by 'specific' evidence will be insufficient to establish a genuine issue of fact." *Id.* (citations omitted). *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 902 (1990).

"[T]he showing (whether as to standing or the merits) required to overcome a motion for summary judgment is more extensive than that required in the context of a motion to dismiss."

*Id*. "The principal difference is that in the former context evidence is required, while in the latter setting the litigant may rest upon the allegations of his complaint." *Id.* (citations omitted); *see* FED. R. CIV. P. 56(e) (requiring the "nonmoving party to go beyond the pleadings.").

  **B.**  **Discussion**

  To establish a prima facie case of negligence, a plaintiff must prove: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; (3) causation; and (4) damages. *Case v. Consumers Power Co.*, 463 Mich. 1, 6 (2000).

> The general principles of premises liability are well understood . . . . Essentially, social policy imposes on possessors of land a legal duty to protect their invitees on the basis of the special relationship that exists between them. The rationale for imposing liability is that the invitor is in a better position to control the safety aspects of his property when his invitees entrust their own protection to him while entering his property. The invitor's legal duty is "to exercise reasonable care to protect invitees from an unreasonable risk of harm caused by a dangerous condition of the land" that the landowner knows or should know the invitees will not discover, realize, or protect themselves against.

*Bertrand v. Alan Ford*, 449 Mich. 606, 609 (1995) (internal citations omitted). An invitee is someone who enter upon someone's real property by invitation with an understanding that reasonable care has been used to make the premises safe for the invitee. *Wymer v Holmes*, 429 Mich. 66, 71 n.1 (1987). Therefore, the landowner has a duty of care to warn the invitee of any known dangers, and to make the premises safe. To do so, the landowner must inspect the premises, make any necessary repairs, or warn of any discovered hazards. *Id*. An invitor does not absolutely insure the safety of an invitee. *Quinlivan v. Great Atl. & Pac. Tea Co.*, 395 Mich. 244, 261 (1975).

    **1.**  **The Existence of a Duty**

  Defendant argues that there is no precedent that a dry floor, without more, constitutes a

hazard, and that Plaintiff's fall does not mean that the floor was, *ipso facto,* a dangerous condition on the land. Defendant contends that there is no assertion on the part of Plaintiff that there was a foreign substance on the floor and cannot identify what caused her to fall.

Plaintiff argues that the evidence suggests that Defendant owed a duty to Plaintiff because Defendant created the unsafe, wet tile floor where Plaintiff fell by mopping the area just prior to Plaintiff's fall. Plaintiff also asserts that Defendant placed pitchers of water and iced tea on the half wall partition where Plaintiff fell, and over-waxed the floor in the area of the fall.

> The landowner must not only warn an invitee of any known dangers, but must also make the premises safe. The landowner has a duty to inspect the premises and, depending upon the circumstances, make any necessary repairs or warn of any discovered hazards. A premises possessor is not required, however, to protect an invitee from an open and obvious danger unless special aspects of a condition make even an open and obvious risk unreasonably dangerous. Under such circumstances, the premises possessor must undertake reasonable precautions to protect invitees from that risk.

*Vella v. Hyatt Corp.*, 166 F. Supp. 2d 1193, 1197-98 (E.D. Mich. 2001) (citations omitted).

It is undisputed that Plaintiff went to Defendant's restaurant to have dinner and therefore was an invitee entitled to the highest standard of care. However, the question remains whether Defendant had a duty to warn Plaintiff about the condition of the floor.

Most of Plaintiff's duty to warn arguments are not persuasive for a number of reasons. First, Plaintiff could not even identify the surface of the flooring upon which she slipped. (Def.'s Br. Ex. A, Pl.'s Dep. 59). Plaintiff testified that "I think I slipped on the tile . . . It may have been the wood." (*Id.*). Ultimately, Plaintiff conceded that she was not sure. (*Id.*).

Second, Plaintiff testified that the floor upon which her incident occurred was slippery, but no water was visible on the floor, nor was there a visible foreign substance on the floor. (*Id.* at 55). In fact, Plaintiff stated that there was nothing at all visible on the floor. (*Id.*).

Third, while Plaintiff contends that the floor was mopped just prior to her fall, (Pl.'s Resp. Ex. 2, Rosseter Dep. 11-12), Rosseter, whose testimony Plaintiff relies for this assertion, contradicted his statement later in his deposition.  Rosseter ultimately testified that he did not recall one way or the other whether an employee had mopped the area in question prior to Plaintiff's fall.  (Pl.'s Resp. Ex. 2, Rosseter Dep. 25).  Thus, there is no testimony supporting Plaintiff's allegation that the floor was just mopped.

Fourth, Plaintiff insinuates that the pitchers of water and iced tea on the half wall partition were responsible for Plaintiff's fall, presumably because water or iced tea found its way onto the floor during the course of business.  However, the record is void of evidence showing that water or tea dripped or splashed onto the floor.  Plaintiff's evidence is Russ' testimony that the pitchers were located very close to the spot where Plaintiff fell.  The Court finds that liquid in the pitcher, as the cause of Plaintiff's fall, is not supported by the record.

Only Plaintiff's argument that the floor was over-waxed has support in the record.  Plaintiff testified that Defendant's employee Russ informed her the floor was over-waxed and that other patrons had fallen in the exact same spot.  Defense counsel questioned Plaintiff about her Interrogatory answers regarding the incident:

> Q. . . . Alright, I am going to read you your answer to Interrogatory No. 10.
> A. Okay.
> Q. The question says, state in your own words and in detail your version of how the incident set forth in your Complaint occurred. And your answer was . . . . I asked waitress to accompany me to bathroom to look at shoulder [sic].  I was lacerated and very red.  The waitress even commented on how awful [sic] painful it looked.  I asked why they had not put a rug or do [sic] something there since they had told me *there was previously numerous incidents of patrons falling there*.
> They then put a rug at that location on the floor.  One of the employees I spoke with, I'm not sure which one, but I think it was the waitress, stated that the *floor was always over-waxed*.
> That was your complete answer to that question, okay?

9

      A.      I wrote "patients"?  Oh, patrons.  I thought you said patients.
      Q.      Okay.  So was that answer true at the time you made it?
      A.      Yes.
      Q.      And it is true today?
      A.      Yes.

(Def.'s Br. Ex. A, Pl.'s Dep. 54-55) (emphasis added).  Russ, who Plaintiff refers to in her testimony, testified that she has no recollection of the incident.  (Def.'s Br. Ex. E, Russ Dep. 11, 14).  Russ testified that she could not identify Plaintiff if they were sitting across from each other; she did not go into the bathroom with Plaintiff and see her injury; and she has no recollection of talking to Plaintiff about what happened.  (*Id.*).  Additionally, Russ testified that she would have remembered going into the bathroom and seeing Plaintiff's laceration, if it was she who attended to Plaintiff.  (*Id.* at 14-15).  Russ testified that she had no idea why she was listed on the incident report.  (*Id.* at 11).

      Although Plaintiff and Russ' testimony conflict, a conflict in witness testimony typically affects the weight of the testimony, not its admissibility.  Thus, the weighing of the evidence is a matter for the trier of fact.  At this stage of the proceeding, the Court must view the testimony in a light most favorable to Plaintiff: Russ told Plaintiff that other patrons fell in the same spot and that the floors were over-waxed.  Therefore, Defendant incorrectly argues that Plaintiff cannot identify a unreasonable risk of harm caused by a dangerous condition or that Plaintiff has no evidence that the tile or wood floor were slippery.   Accordingly, the Court finds that Defendant owed a duty to warn Plaintiff of any hidden dangers knew of or has reason to know of.

                a.      Open and Obvious Doctrine

      Generally, there is no obligation to warn a person of dangers that are so obvious and apparent that the person in question is reasonably expected to discover them and protect himself

or herself.  *Laier v. Kitchen*, 266 Mich. App. 482, 487 (2005).  The rationale for this is that "there should be no liability for failing to warn someone of a risk or hazard [that] he appreciated to the same extent as a warning would have provided."  *Id.* (citation omitted).  "The open and obvious danger doctrine should not be viewed as an exception to the duty generally owed invitees; rather, it is an integral part of the definition of that duty."  *Id.* at 487-88.  "Duty exists because the relationship between the parties gives rise to a legal obligation," but public policy can limit the scope of the duty owed.  *Id.* at 488.

Defendant argues that it owed no duty to Plaintiff because an unreasonable risk of harm could not have been anticipated and the condition of the floor was open and obvious.  Defendant contends that an average user of ordinary intelligence, upon casual inspection of the floor, would have discovered the tile surface.  Defendant also argues that Plaintiff walked over the surface prior to her fall and admits that it was not unusually slippery.  Defendant asserts that the condition of the floor was known to Plaintiff because she walked over the floor prior to her fall.  Defendant avers that there was nothing to indicate that the condition of the floor was unavoidable or that the floor presented a substantial risk of death or severe injury.

Plaintiff argues that Defendant cannot not claim that the floor was not wet, and then turn around and say that the hazardous condition was open and obvious.  Plaintiff also asserts that Defendant's employees placed a floor mat over the sport where Plaintiff fell.  Plaintiff contends that while normally this might be considered a subsequent remedial measure and barred by the Federal Rules of Evidence, here it is admissible to directly rebut Tucker's testimony that there was nothing done to the floor after the fall because the floor was clean.

The Court finds, viewing the evidence in a light most favorable to Plaintiff, the non-

moving party, that the condition of Defendant's floor was not open and obvious.  As stated above, the only argument by Plaintiff which survives is that the floor was over-waxed and other customers have fallen in that area.  Considering that the issue is floor wax, the Court cannot state that an over-waxed floor is so obvious and apparent that an average person of ordinary intelligence is reasonably expected to discover it and protect himself or herself.  While Defendant's argument that Plaintiff had already walked on the floor and thus was aware of the condition of the floor, this argument does not "hunt."  Plaintiff testified that she did not notice that the floor was slippery when she walked on it to get to the bathroom, prior to her fall.  (Def.'s Br. Ex. A, Pl.'s Dep. 68).  Thus, she could not have been on notice of its slippery condition.  Further, there is not an allegation that the entire floor was slippery, only the spot in which Plaintiff fell.  If Plaintiff did not walk across the exact spot where she later fell on her way to the bathroom, then she would not have notice the "slipperiness" of the floor.

     The Court also rejects Defendant's assertion that *Lugo v. Ameritech Corp.* applies to the instant case.  In *Lugo*, the court discussed special aspects of an open and obvious condition that would create a duty upon the land owner despite the open and obvious nature of the hazard.  *Lugo*, 464 Mich. at 517-18.  The *Lugo* court cited the following examples of open and obvious conditions which had special aspects which render them unreasonably dangerous.

> [F]or example, a commercial building with only one exit for the general public where the floor is covered with standing water.  While the condition is open and obvious, a customer wishing to exit the store must leave the store through the water.  In other words, the open and obvious condition is effectively unavoidable. Similarly, an open and obvious condition might be unreasonably dangerous because of special aspects that impose an unreasonably high risk of severe harm. To use another example, consider an unguarded thirty foot deep pit in the middle of a parking lot. The condition might well be open and obvious, and one would likely be capable of avoiding the danger.  Nevertheless, this situation would present such a substantial risk of death or severe injury to one who fell in the pit

> that it would be unreasonably dangerous to maintain the condition, at least absent reasonable warnings or other remedial measures being taken. In sum, only those special aspects that give rise to a uniquely high likelihood of harm or severity of harm if the risk is not avoided will serve to remove that condition from the open and obvious danger doctrine.

*Lugo*, 464 Mich. at 518.

To even consider these special aspects, the Court would have to presume that the danger was open and obvious, which it was not. Therefore, *Lugo* does not apply to the case at bar and in a light most favorable to Plaintiff, Defendant breached its duty to warn Plaintiff.

### 2.     Proximate Cause

Defendant argues that it is Plaintiff's burden to show causation. Defendant contends that Plaintiff only speculates that the condition of the floor was unreasonably dangerous. Defendant believes that evidence of a slippery floor alone is insufficient to create a question for a jury. Defendant asserts that no admissible evidence exists to support the alleged slippy condition of the tile floor.

The cornerstone of the concept of proximate cause is foreseeability. *Crews v. General Motors Corp.*, 400 Mich. 208, 229 (1977). The Court must ask whether the defendant's breach of duty was a proximate cause of the damages suffered by the plaintiff. *See Vella*, 166 F. Supp. 2d at 1197. The fact that Plaintiff fell, in and of itself, is not enough to find a cause of action under premises liability. *Id.* at 1199.

While this is a close case, taking the evidence in the light most favorable to the non-moving party, the evidence supports a finding that the floors were over-waxed and that Defendant had knowledge of prior patrons falling on the floor. Thus, it was foreseeable that without adequate notice of the floor's slippery condition, future patrons might also fall.

Accordingly, the Court finds that Plaintiff has met her burden of showing proximate cause.

## III. CONCLUSION

For the reasons stated, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion for Summary Judgment. The Court:

(1) GRANTS Defendant's motion to the extent Plaintiff alleges that mopping, or the pitchers of water and iced tea on the half wall partition were a cause of Plaintiff's fall; and

(2) DENIES Defendant's motion to the extent Plaintiff alleges the over-waxed floors were the cause of Plaintiff's fall.

**SO ORDERED.**

                    s/Paul D. Borman
                    PAUL D. BORMAN
                    UNITED STATES DISTRICT JUDGE

Dated: January 24, 2007

### CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on January 24, 2007.

                    s/Denise Goodine
                    Case Manager